The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning and welcome to the Ninth Circuit. Before we begin, Judge Baivia and I want to thank Judge Fisher from the Third Circuit of Pennsylvania, I believe, for coming out here and helping us out today. We have one case for argument today, but we have submitted three cases already, and they are Alvarez v. Garland, Muniz v. Garland, and Arguetic Gutierrez v. Garland. The case we will hear argument today is Diaz v. Macys West Stores. Mr. Schaffer, you're appearing by Zoom. Hopefully you can hear us. I can, Your Honor. Thank you. You can begin whenever you're ready, and hopefully you can see the clock and keep track of your time, if you want to reserve time for rebuttal. Thank you, Your Honor. If I may, I'd like to reserve three minutes for rebuttal. Good morning, Your Honors. My name is Judge Schaffer, and I represent Descendant and Appellant Macys. After the U.S. Supreme Court's recent decision in Viking River Cruises, when a plaintiff has agreed to an arbitration governed by the Federal Arbitration Act, his or her positive claim is split into two components, an individual claim and a non-individual claim. Now, Viking River said that the individual claim must be arbitrated, but that the non-individual claim must be dismissed. Now, the District Court here got that half right. The District Court sent the individual claim to arbitration. That was correct. But the District Court also sent the non-individual claim to arbitration, and that was there. This appeal presents the question of what should happen with the non-individual positive claim. Respectfully, we would argue that the non-individual positive claim should be dismissed and should not have been sent to arbitration. Why did the Supreme Court say that the representative claim had to be dismissed? Well, Your Honor, it said that as a matter of Federal law. When you take a look at the Viking River decision, it says right up front that it's deciding a single question. It's deciding a question of Federal preemption. I thought they read this as a matter of California standing law. And Justice Sotomayor, I think, was quite clear that that could be revisited by the California courts, which they did. Justice Sotomayor did indicate that in her concurrent opinion, Your Honor, but that's just a concurrent opinion. The majority never suggested that it was deciding a statewide issue. Its introduction specifically says it's deciding a Federal issue, which makes sense because the question presented, which the Supreme Court granted certiorari to decide, solely had to do with an issue of Federal law. I'm looking at the next to the last paragraph in the court's decision. The remaining question is what the lower court should have done with the non-individual claims. They may not be dismissed simply because they are representative. And then it cites Iskanian, which is the California Supreme Court rule. And it remains valid. And as we see it, PAGA, that's the California statute, requires, and you know what that says, that's a matter of California law. But it's the Supreme Court saying this is the way we think California law comes out. Now, why can't California revisit that? And why isn't that what's happened in Adolph? Well, Your Honor, it's important to put that paragraph in context. Bear in mind that before the Supreme Court took up Viking River, California courts, and this court, had been clear that there was no such thing as an individual PAGA claim. There was a single, indivisible PAGA representative action, nothing else. And so the U.S. Supreme Court and Viking River essentially what I call split the atom, right? They divided something that California law had said could never be divided. The U.S. Supreme Court is typically not in the business of creating new state law. When it is, it says so expressly. And instead, Viking River said right up front in the introduction that it was deciding only a question of federal law, federal preemption. It can't decide matters of state law. But the court concludes, and this is the last sentence in the next to the last paragraph of the opinion, as a result, Moriana, the individual at issue in Viking River, lacks statutory standing to continue to maintain all of the citations in there are to California law. That's not an Article III question. That is, as a matter of California law, she lacks standing. And the court, as I read it in Adolf, said the Supreme Court is wrong on California law. And we can split the two issues, and she has standing to proceed on the representative claims. Your Honor, I certainly acknowledge that that paragraph touches on California law, which makes sense, because in the context of deciding FAA issues, while the FAA creates a body of substantive federal law, courts addressing FAA preemption have to discuss state law. But I acknowledge that that paragraph does have some loose language in it that makes things a bit confusing. But I will say that in the absence of the U.S. Supreme Court saying that it's deciding a state law issue, and given that the U.S. Supreme Court expressly said right up front in Viking River, in granting certiorari to decide the question presented, it was only addressing a federal preemption issue, that courts should lead in favor of taking the U.S. Supreme Court at its word that it's deciding a federal issue. But I will say, Your Honors, that ultimately, whether or not the Viking River decision required the dismissal of non-individual PACA claims as a matter of state law or federal law doesn't make a difference to the disposition of this case, because either way, the non-individual PACA claims here should have been dismissed. Even assuming for the sake of argument that what Viking River's dismissal rule was simply a construction of state statutory standing, which is the view that the California Supreme Court adopted in its recent Adolf the Uber decision, that Adolf decision is itself preempted by the FAA, which is a subject that Adolf itself never addressed. And the reason that the Adolf rule is preempted by the FAA lies in the very logic of Viking River itself. When a PACA plaintiff is pursuing a non-individual PACA claim, the plaintiff is adjudicating whether or not other employees, those absent third-party employees, have themselves suffered, allegedly suffered, labor code violations. Now, those other employees have agreed to arbitrate all their own disputes with Macy's through its alternative dispute resolution program. And allowing a PACA plaintiff to adjudicate whether those underlying violations happened would interfere with the contractual arbitration rights both of Macy's and those other employees who never agreed to allow those violations to be adjudicated in court. Instead, Macy's and those other employees consented to have those disputes arbitrated. So, Viking River's own logic made very clear that at the end of the day, arbitration is about consent. Consent is king. And that California law cannot interfere with the plain terms of an arbitration agreement and what the parties agreed to arbitrate, including the disputes that they agreed to arbitrate. So, again, the very logic of Viking River would say that the Adolf rule is wrong to the extent that it would allow a non-individual PACA claim to proceed in court. So, what happens if a non-individual PACA claim does proceed in court, whether it be this case or another case? What happens to a case that's in arbitration if the PACA, if the non-individual claim in court gets decided first? If the non-individual PACA claim gets decided first? Because, best for your honor, I don't think that either California or federal law would permit that to happen. So, first of all, it's a matter of the state law. Well, whether it permits it or not, what happens if it does do it? I mean, if the district court got this case back and they immediately took it up and made a decision on it, what does that do to the arbitration if the arbitration hasn't been held? I think that result would be foreclosed by the FAA. That would be, at the end of the day, the parties agree, at the very minimum, the PACA plaintiff has agreed to, or she or he or she has agreed to arbitrate whether or not they personally suffered a labor code violation. And they can't move forward with a non-individual PACA claim without having that issue of agreement decided first. That issue of agreement is committed to the arbitration forum, which is exactly why Adolph specifically said that what happens in this kind of context, even assuming the dismissal rule is purely a question of state law, is that the non-individual PACA claim has to go forward first. I'm sorry, that the individual PACA claim has to go forward first in arbitration, and only then, once that is conclusively resolved, can anything further happen with the non-individual PACA claim. And that scenario, which was outlined in Adolph, so assume the individual PACA claim is arbitrated, and the arbitrator rules for the employee, and says the employee is an aggrieved employee, would that have a preclusive effect, at least in the non-individual PACA claim in court? If the arbitrator rules that the employee has suffered a labor code violation, yeah? Yes, and says he or she is an aggrieved employee. If the arbitrator ruled that, and that ruling was confirmed by the court, and once that ruling was definitive following any appeals, then the issue of aggrievement would have been resolved for the purposes of the lawsuit. And is there any problem with that? There may be problems with that. There is open questions about the extent to which an arbitration can have any kind of collateral estoppel or rate of judicata effect on a lawsuit under state or federal law. Obviously, Adolph seemed to think that from a California law perspective, that might have a collateral estoppel effect. But I note that even under California law, the collateral estoppel and rate of judicata impact of what's happening with a PACA claim in arbitration versus outside of arbitration remains in flux, and is the subject of some dispute by the California courts of appeal. As a practical matter, does it assume there's a preclusive effect for the non-individual claim, the statutory standing question in court? I mean, as a practical matter, does it make a difference? Because presumably in court, the plaintiff would also have to show Article III standing. So is any statutory standing question kind of subsumed under Article III standing analysis? I think that's right. I think that they're both intimately intertwined. While Adolph itself did not, for example, decide whether anyone has Article III standing, its logic makes clear that the federal courts have standing over the non-individual PACA claim unless and until a plaintiff is found not to have suffered a personal violation of the labor code in the arbitration. If that were to happen, Adolph made clear that the plaintiff would also lose statutory standing to move forward with a non-individual PACA claim. So, but again, these results would be foreclosed by the FAA because even set aside the interplay between the question of whether the plaintiff has personally suffered a violation of the labor code, the issue that's being adjudicated in the arbitration. At the end of the day, a plaintiff cannot move forward under the FAA with a non-individual PACA claim where that non-individual PACA claim is adjudicating the disputes, the underlying alleged labor code violations that were purportedly suffered by the other employees. That's foreclosed by the terms of the arbitration contract and by the logic of Section III of Viking River. So respectfully, Your Honors, this court should reverse the district court's order insofar as it compels the non-individual PACA claim arbitration with directions for the district court to enter a new order that dismisses the non-individual PACA claims. If I may, I'd like to save the rest of my time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, Ryan Liu appearing on behalf of Appelli Uria Diaz. I'd like to first address the invitation for this court to abrogate Adolph v. Uber. Macy's here misreads Viking River. Viking River states very clearly that claims cannot be dismissed representative. PACA claims cannot be dismissed simply because they are representative. And in Section II of Viking River, the court goes into great detail about certain principles of the FAA that my friend on the other side has elided, which is that under the FAA, substantive rights and remedies cannot be waived or extinguished by virtue of being in an arbitration agreement. So the court goes into great detail about this. And in doing so, it found that the primary Iskenian rule, which is the rule that PACA representative actions cannot be waived wholesale, is left intact. What it did was find that to the extent that the parties have contractually decided to arbitrate individual PACA claims, the secondary rule, which is a rule that says that these claims can't, the individual PACA claim can't be sort of pulled out of the PACA action, that sort of forced joinder rule from Iskenian is preempted by the FAA. That's a relatively modest holding. And as your Honor, I'm sure has read Viking River many times, there are lengthy sections where the court rejected the defendant's attempt to make a sweeping holding, to apply class action precedents and hold that representative action claims are waived when there is a representative action waiver. And as Judge Bowdy pointed out, the issue here regarding the dismissal of non-individual claims in Viking River had to do with statutory standing under California law. What do you think we have to do in this case? Well, I think it's a clear affirmance of the district court because the district court read the agreement correctly. The agreement here, you know, You think that both claims go to the court of arbitration? Yes, yes. Because the joinder rule, you know, Viking River says this, the statute's joinder rule is a built-in mechanism. That's the joinder. As, in fact, Macy says, it's in the action, the claim itself encompasses both individual and non-individual claims. Now, when a party has, when the parties have decided to arbitrate only the individual claims, then the individual joinder claim can be pulled out. That's what Viking River says. When the parties have not decided to arbitrate individual claims, which they have not here, then the individual PACA claims and the non-individual PACA claims go to arbitration. Now, I would have thought that the representative claims would remain in district court. No, I think based on the agreement, and so the reasoning of the district court is this, right? The arbitration clause covers all employment statutory claims. PACA is a statutory claim, employment claim, and it encompasses both individual and non-individual claims. So, to the extent that the arbitration clause covers those claims, that goes to arbitration, the entire claim goes to arbitration. So, the, Macy's argues that the class and collective action waiver, you know, makes it so that it operates as a representative action waiver and holds that the parties did not agree to the non-individual claims being sent to arbitration. But the, if you read the class and collective action waiver, it says very clearly that it is. I'm looking at, I'm looking at the arbitrator shall not consolidate claims of different associates into one proceeding, nor shall the arbitrator have power to hear an arbitration as a class or collective action. Right. Yes, exactly. And so, the consolidation of employees' different claims does not apply to PACA claims. Viking River says specifically that class actions are different from representative PACA actions, and that a PACA action is a, an action that belongs to the state that encompasses multitude of claims. So. It makes that provision unenforceable to the, to some extent. The Viking River then separates these. And it looks to me like the, like the representative claims have to go back to the district court. That's not what we're arguing, Your Honor, respectfully. What we're saying is that, that provision doesn't apply to representative PACA claims. Can't you read, we're required under California law to read the agreement. Yes. Holistically. Okay. And can't the agreement be read in such a way that the parties only intended to send individual claims to arbitration? I don't think so, Your Honor. I would make three points on that. First, parties know how to write representative action waivers. They're claiming they're in Viking River, they're in Adolph, they're in Eskanian. Macy's did not include one. But this contract was entered in 2012, right? And you're relying a lot on Viking River, which was decided a year ago, and perhaps a novel construction of PACA claims, how to construe them. So can we really, it's almost kind of like back to the future analysis here, taking Viking River from the future and taking it back on a DeLorean back to 2012 to ascertain the party's intent. And so I don't know if you can rely so much on what Viking River said, because it was in many ways kind of a novel way to read PACA claims. And if you look at just the 2012 contract, I mean, again, we're supposed to ascertain the party's intent here. I mean, it seems everything, the thrust of it is, throughout holistically, as Judge Fischer said, is that individual claims will be arbitrated, and really it's only individual claims. It makes sense. I don't think people want to arbitrate mass actions or class actions in an arbitration context. I would say two things about that, Your Honor. One is the representative action waivers were common in 2014 when Eskanian was decided. I was counsel on Eskanian, and those contracts were from 2007. So they were commonplace. Second, I would say that under California law, the party's intent at the time of contracting is what matters, and the text of the contract is sort of the overarching mechanism by which we infer the intent of the parties. The text of the contract says that all employment claims go to arbitration. PACA is an employment claim. It says specifically that class and collective action, collective actions, which it defines as a representative party representing a group of individuals, it only says that. Those are waived, right? But that's the text in the document itself. And PACA, as the Ninth Circuit has said repeatedly and as Viking River has said, PACA is fundamentally different from class actions. It belongs to the state. There is no other parties. And so if we take Hamilton v. Walmart seriously, on the reasoning of that, the difference between class actions and PAC actions, if we sort of, you know, look at the three pages that Justice Alito spent on the differences between class actions and PAC actions, we have to say, how can a class action waiver cover PAC actions when they are fundamentally different? Would this class action waiver cover Sherwood River actions? Would they aren't individual? I guess my question would be, would you agree that PACA non-individual actions are not individual actions? Yes. But as the court says in Viking River, bilateral representative actions aren't necessarily strictly bilateral individual. And that doesn't mean that it falls within the class action context. So, yes, PACA is not individual to some degree in the sense that the state prosecutes penalties on, you know, assessed on behalf of other employees. But the agreement here doesn't say all individual claims go to arbitration or everything that has to be arbitrated has to be individual. I've seen agreements like that. They are commonplace. This agreement doesn't say that. And I think what's troubling, counsel, is I'm not even sure why this is, why the question of the representative action is even subject to the agreement. Because this is effective, it's a key TAM action. It's been brought on behalf of the Labor and Wage Division. And so the state hasn't agreed to arbitrate this. So as a key TAM action, why would we send this over to arbitration? Your Honor, if that's the court's conclusion, then I think the non-individual claims stay in court. I think that if we were to sort of read the agreement and look at the text carefully and also review the precedents carefully, I think we have to conclude that the agreement did not say that the parties wanted to arbitrate PACA claims only on an individual claims basis, which means that the entire PACA action should go to arbitration. I ask you a question. If we disagree with you that the non-individual claims should go to arbitration, they have to go somewhere. They could get dismissed, as Macy's would argue, or they would go back to the district court. How do we reconcile the existence of the PACA claim being in the district court and the individual claim being in arbitration? I don't think it has to be reconciled. I think Adolph provides a roadmap for that, and I think even Macy's concedes that there is. He would most likely proceed to have the arbitration go first, establish whether or not the employee is aggrieved, and then following that, move on to the non-individual claims in the district court. Does the court knock that named plaintiff out as a representative of the PACA claim? It doesn't, Your Honor, because Adolph specifically says that a PACA plaintiff retains standing to pursue non-individual claims while she's in arbitration. Under California law, post-violation events don't affect statutory standing. So, but I think getting back to the agreement, I think one last principle I just want to mention is that to the extent that the court thinks that there's an ambiguity with the consolidation clause or the class and collective action waiver clause and whether or not that covers PACA claims, the ambiguity is construed against the drafting party. That's Mastro Bono, which is a U.S. Supreme Court case, 514 U.S., 52 from 1995. Under the FAA, that would be construed against the drafting party. Under California contract law, that's also construed against the drafting party, which is Sanquist v. Lebo, 1 Cal 5233. So, but I think the text is clear. I think Judge Gutierrez interpreted the agreement carefully and correctly, and I would ask the court to affirm on that basis. If there are no other questions, that's it. Thank you. I think you're on mute. I'd like to make clear that Macy's does not concede that ADOF provides a roadmap for what should happen with the non-individual PAGA claims. The FAA requires the dismissal of the non-individual PAGA claims because the FAA preempts the ADOF rule, and there's nothing in Section 2 of Viking River that compels a contrary conclusion. Viking River made clear in Section 1 that when it comes to California case law addressing PAGA, that they're using the word representative in two different contexts, two different levels. Your argument that the FAA preempts ADOF is Viking River, or is this a new proposition of law? It is both Viking River and the principles on which Viking River lie. Viking River made clear that individuals can consent to arbitrate certain terms, and in doing so, their consent governs exactly what needs to happen next. They can consent to arbitrate their disputes. Okay, let's suppose that I disagree with you. For purposes of my question, assume that I disagree with you on that point. I'd like to take you back to a point that you made in your opening argument, which is that the district court should nevertheless dismiss the representative claims because all of those individuals there also have a similar arbitration agreement, and if we disaggregate them, they have to pursue it in the same way that Ms. Diaz does, which would require them to go individually to arbitration. So that's an interesting principle, but it does seem inconsistent. It seems consistent with a class action, but it seems inconsistent with a representative PAGA claim because the PAGA claim is a key to an action. It is brought on behalf of California state government. So why do we disaggregate those claims in that way if they're being pursued, if the real party in interest is the state government and not the individual employees? Your Honor, this is where the logic of Viking River really does come into play, the differences which are acute between Sections 2 and Section 3 of Viking River. Again, in Section 1, Viking River says that California cases describe representative PAGA actions in two different contexts, two levels. The first is whether or not the PAGA plaintiff, the named PAGA plaintiff, has representative capacity to stand in the shoes of the government. That's what Section 2 of Viking River was addressing, whether arbitration agreements can remove the plaintiff's representative capacity to stand in the shoes of the government. But Section 1 also explained that there's another sense in which PAGA actions are representative, and that's in the sense that the named plaintiff is seeking to adjudicate the underlying alleged labor code violations suffered by other employees, which is exactly why it's not just a single claim. It's a package of a multitude of claims. And it's that aspect of it, the second level, what I would call the horizontal level, the named plaintiff trying to adjudicate the labor code violations of other employees, that ties into the logic of Section 3 of Viking River, because that section says that folks can agree to arbitrate their disputes, and that's exactly what these other employees have done. They've agreed to arbitrate any dispute that may exist over whether they have suffered labor code violations. If the state had actually brought this action, it was not a TTAB action under PAGA, but if the state law and wage division, or labor and wage division, had come in and said, we're going to sue Macy's because we think that there are widespread violations of state law, would the arbitration agreement apply to that? It may, Your Honors. That's a subject of a California Supreme Court petition for review as we speak, insofar as the state is seeking individual relief for the workers themselves. I don't think the relief is always going to be individual in some sense. And to the extent it is, then I would take the position that, yes, the arbitration agreements would require the state to sue Macy's. It would preempt the state from bringing an action to enforce its own laws. Even to the individual relief that the state is seeking as opposed to the relief for itself. But, Your Honors, this court doesn't even have to get that far, because at the end of the day, what matters for the preemption argument here is that the named PAGA plaintiff is trying to adjudicate the underlying alleged labor code violations suffered by other folks, and that is what the text of the agreement commits to arbitration. The plaintiff cannot move forward with that, and that's a very different subject than the question of representative capacity that's dealt with in Section 2 of the Viking River. If I may, Your Honors, I'd really quickly like to address the other side's argument about the text of the arbitration agreement here and whether the non-individual PAGA claims should be sent to arbitration. The district court erred in sending the non-individual claims arbitration because contrary to the district court's view and the plaintiff's adherence to that view, the text of the agreement itself forecloses the arbitration of non-individual PAGA claims, and it does so in several ways. First, there's Article 11F2, which Your Honors had mentioned, which waives class and representative actions and prohibits the consolidation of claims. Both California appellate case law and this own court's case law has indicated that when you have a waiver that refers to class and collective actions, that covers PAGA claims because PAGA claims are a collective interest, which Viking River recognizes. Viking River recognizes that despite the differences between class actions and PAGA actions, a PAGA action is not an individual claim. It's a multitude of claims that are brought together into a single massive package. On top of that, Your Honors, even without that waiver provision and consolidation provision, you also have the other language in the Alternative Dispute Resolution Program, and this is not just limited to the arbitration agreement itself, but also to all of the steps that preceded it. All of that language contemplates a one-on-one arbitration that's only over an employee's own employment. In the arbitration agreement itself, you have the employee being referred to in the singular form, you have the arbitration provisions limiting the arbitral claims to those arising solely from the worker's own employment, and you have arbitration procedures that contemplate only the adjudication of a single worker's claims about their own employment. If you could wrap up, you've exceeded your time, so can you just wrap up? Absolutely, Your Honors. All of that language shows that the non-individual claim should not have gone to arbitration, and respectfully, this Court has reversed with directions to have that non-individual claim dismissed. Thank you both for the helpful argument. This case has been submitted and we're adjourned for the day.
judges: BYBEE, Fisher, LEE